IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLY DEVRIES,

       Plaintiff,

            3:13-CV-01001-PK

            FINDINGS AND
            RECOMMENDATION

       v.

ADVANCED AMERICAN CONSTRUCTION,
INC., TOM SEUBERT, GRAYSON HART,
LABORERS' LOCAL 791, and LABORERS'
LOCAL 335,

       Defendants.

PAPAK, Magistrate Judge:

       Plaintiff Shelly Devries brings this action against Advanced American Construction, Inc.

("AAC"), Tom Seubert, Grayson Hart, Laborers' Local 791 ("Local 791"), and Laborers' Local

335 ("Local 335") alleging sexual harassment, sex discrimination, and retaliation. Now before

Page 1 - FINDINGS AND RECOMMENDATION

the court is Local 335's motion to dismiss for lack of personal jurisdiction (#40). For the reasons set forth below, the motion should be denied.

## BACKGROUND

At all relevant times, plaintiff was a member of Local 791, a labor union based in Longview, Washington, with a jurisdiction covering various counties in southwest Washington. First Amended Complaint, #32, ¶ 7; Declaration of Glenn Willman, Jr. ("Willman Decl."), #42, ¶¶ 7-8. "Local 791 dispatched bargaining unit members to jobs located in [its] jurisdiction only" and it "never dispatched bargaining unit members to work in Oregon." Willman Decl., #42, ¶ 8.

On or about May 4, 2009, plaintiff was dispatched by an Oregon labor union to work at AAC, an Oregon company with its principal place of business in Portland. First Amended Complaint, #32, ¶ 5; Ex. A, Declaration of Robert Meyer ("Meyer Decl."), #48-1, at 22. Plaintiff worked at AAC off-and-on, with AAC laying her off and rehiring her at various times. Ex. A, Declaration of Shelly Devries, #48-2, at 2. On February 18, 2011, AAC rehired plaintiff to work at its Portland headquarters. First Amended Complaint, #32, ¶¶ 11-12. During plaintiff's employment at AAC from February 18, 2011, to June 6, 2011, one of plaintiff's supervisors, Seubert, subjected her to "unwelcome inappropriate contact on several occasions . . . [and] made numerous offensive sexual comments" to her. *Id.* ¶¶ 12, 14. On or about May 13, 2011, Seubert "walked up behind [p]laintiff and intimately groped her butt." *Id.* ¶ 15. Shortly after plaintiff reported the incident to a management employee at AAC, AAC laid off plaintiff, purportedly "to cut back on overhead." *Id.* ¶¶ 16-17. Hart, one of the owners of AAC, assured plaintiff that she was eligible for rehire "when business picked back up." *Id.* ¶¶ 6, 18. Plaintiff, however, later

learned "that she had been deemed ineligible for rehire by . . . Hart and that a less qualified male worker had been hired to replace her." *Id.* ¶ 19.

When plaintiff was not rehired, she contacted Local 791, which called AAC on plaintiff's behalf. Ex. A, Meyer Decl., #48-1, at 22. AAC informed Local 791 that plaintiff would be rehired "as soon as work[] picked up." *Id.* When plaintiff was still not rehired, she contacted Local 791 again to lodge a grievance against AAC. First Amended Complaint, #32, ¶ 20. Although Local 791 discouraged her from filing a grievance, plaintiff nonetheless did so. *Id.* Within a few days of plaintiff filing her grievance, Local 791 summarily denied it and informed plaintiff that "she was no longer eligible for work." *Id.*

On June 14, 2013, plaintiff initiated the instant lawsuit, alleging sex discrimination, sexual harassment, and retaliation in violation of state and federal law. Complaint, #1, ¶¶ 21-78. Relevant to the instant motion are plaintiff's two claims against Local 791. First, plaintiff claims that Local 791 discriminated against her on the basis of sex by inadequately investigating her grievance, which resulted in AAC not rehiring her. *Id.* ¶¶ 52-57. Second, plaintiff claims that Local 791 retaliated against her for engaging in a protected activity—that is, reporting sexual harassment—by inadequately investigating her grievance, which resulted in AAC not rehiring her. *Id.* ¶¶ 59-64.

Shortly before plaintiff filed the complaint, "the Laborers International Union of North America ('LiUNA!'), by order of its General President, Mr. Terence M. O'Sullivan, for reasons wholly unrelated to the instant action, declared Local 791's charter suspended and ordered the transfer of its members to Local 335," a labor union based in Vancouver, Washington, with a jurisdiction covering various counties in southwest Washington. Declaration of Dmitri Iglitzin

("Iglitzin Decl."), #26, ¶ 3 (citing Ex. 1, Iglitzin Decl., #26, at 1-2); Willman Decl., #42, ¶¶ 3-4.

Like Local 791, Local 335 never dispatched its members to work in Oregon.  Willman Decl.,

#42, ¶ 5.  In consequence of the transfer of Local 791's members to Local 335, plaintiff filed the

first amended complaint, adding Local 335 as a defendant and alleging that Local 335, "as the

successor to [Local 791], is liable in this action to the extent that [Local 791] is liable."  First

Amended Complaint, #32, ¶ 7.

On December 12, 2013, Local 335 filed the instant motion to dismiss for lack of personal

jurisdiction.  On January 9, 2014, plaintiff filed a resistance (#48).  On January 23, 2014, Local

335 filed a reply (#50).  On January 30, 2014, the court heard oral argument.  The motion is fully

submitted and ready for decision.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil

Procedure 12(b)(2).  *See* Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that

jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v.

Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  In evaluating the defendant's motion, "[t]he

court may consider evidence presented in affidavits to assist it in its determination and may order

discovery on the jurisdictional issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)

(citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the

court decides the motion based on the pleadings and affidavits submitted by the parties without

conducting an evidentiary hearing, "the plaintiff need make only a prima facie showing of

jurisdictional facts to withstand the motion to dismiss."  *Id.* (quoting *Ballard v. Savage*, 65 F.3d

1495, 1498 (9th Cir. 1995)).  In the absence of such an evidentiary hearing, the court accepts

uncontroverted allegations contained within the plaintiff's complaint as true and resolves

conflicts between statements contained within the parties' affidavits in the plaintiff's favor.  *See*

*id.*

## DISCUSSION

### I.    Waiver

Plaintiff first argues that the court should deny Local 335's motion on the basis that Local

335 waived any argument as to personal jurisdiction by failing to file a motion to dismiss within

twenty-one days of service, as required by Federal Rule of Civil Procedure 12.  Local 335

responds that, in *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1341 (9th Cir. 1976), the

Ninth Circuit Court of Appeals held that the twenty-one-day deadline for filing an answer does

not apply to motions to dismiss and, thus, Local 335's motion to dismiss is timely.

Pursuant to Rule 12(a), a defendant must serve an answer "within 21 days after being

served with the summons and complaint."  Fed. R. Civ. P. 12(a).  Rule 12(b) provides that

"[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading

if one is required," but certain defenses, including lack of personal jurisdiction, may be raised by

motion.  Fed. R. Civ. P. 12(b).  Such a motion must be filed "before any pleading if a responsive

pleading is allowed."  *Id.*  Failure to include a Rule 12(b) defense in a motion or responsive

pleading results in waiver of the defense.  *See* Fed. R. Civ. P. 12(h).

Absent from Rule 12 is any explicit time limit for motions to dismiss under Rule 12(b).

In *Bechtel*, the Ninth Circuit addressed the issue of whether a defendant who had filed a motion

to dismiss challenging venue after the twenty-day[1] deadline in Rule 12(a) had waived such defense. The Ninth Circuit acknowledged that some courts had found that, "because Rule 12(a) requires the responsive pleading to be served within 20 days after service of the summons and complaint, that period also restricts the time for raising those defenses that must be asserted either by motion or in the responsive pleading under Rule 12(b)." *Id.* at 1340-41. The Ninth Circuit, however, concluded that such a "rigid interpretation" of Rule 12 was not justified. *Id.* at 1341. Because the district court had granted the defendant an extension of time to file a responsive pleading and because the defendant had filed the motion to dismiss before its responsive pleading, the Ninth Circuit concluded that the motion to dismiss was timely. *Id.*

Post-*Bechtel*, several district courts have held that, even when a defendant has not received an extension of time to file an answer, the time limit imposed in Rule 12(a) does not apply to Rule 12(b) motions to dismiss. *See Christenson Media Grp., Inc. v. Lang Indus., Inc.*, No. 10-2505-JTM, 2011 WL 2551744, at *2 (D. Kan. June 27, 2011) (citing cases); *see also Buzayan v. City of Davis*, No. 2:06-cv-1576-MCE-DAD, 2009 WL 514201, at *2-3 (E.D. Cal. Feb. 26, 2009) (finding that the defendants' motion to dismiss was timely even though the defendants had filed it after the time limit in Rule 12(a) expired because the defendants filed the motion before any responsive pleading and no default had been entered against the defendants). These courts conclude that a defendant need only file a motion to dismiss in a "reasonably timely fashion." *See Christenson*, 2011 WL 2551744, at *3 (citation omitted). *But see Chang Young Bak v. Metro-N. R.R. Co.*, No. 12 CV 3220, 2013 WL 1248581, at *1-2 (S.D.N.Y. Mar. 26,

---

[1] The deadline set forth in Rule 12(a) has since been amended. The rule currently requires a defendant to file an answer within twenty-one days.

2013) (assuming without deciding that the twenty-one-day time limit in Rule 12(a) applies to motions to dismiss under Rule 12(b)).

I agree with those district courts that have found that Rule 12(a)'s twenty-one-day deadline does not apply to motions to dismiss.  In this case, Local 335 filed its motion to dismiss prior to any responsive pleading and it filed the motion in a "reasonably timely fashion," *Christenson*, 2011 WL 2551744, at *3 (citation omitted)—that is, thirty-five days after it was served with the summons and complaint.  Accordingly, I find that Local 335 did not waive its argument with regard to lack of personal jurisdiction and I shall turn now to consider the merits of Local 335's motion.

## II.    Personal Jurisdiction

In its memorandum in support of the motion to dismiss, Local 335 argues that the court lacks personal jurisdiction over it because it is Washington-based union that does not dispatch members to Oregon or engage in any other continuous and systematic business in Oregon.  Local 335 also notes that Local 791, before its charter was suspended, was also a Washington-based union and that it did not dispatch members to Oregon.[2]  Plaintiff responds that the court has personal jurisdiction because Local 335 signed a labor agreement in Oregon with an Oregon corporation and, moreover, Local 335 investigated plaintiff's grievance against an Oregon

---

[2] In its memorandum in support of the motion to dismiss, Local 335 states: "Plaintiff contends that Local 335 is the successor-in-interest to Local 791 and is consequently liable in this action to the extent that Local 791 is liable.  Though Local 335 neither admits nor denies this contention, the successor relationship is assumed for purposes of the instant motion."  Local 335's Memo. in Support of Motion to Dismiss, #41, at 2 (citation omitted).  Accordingly, for the purposes of this motion, I shall attribute any contacts Local 791 had with the State of Oregon to Local 335.  For ease of reading, I shall refer to the unions collectively as "Local 335."

employer.  For the reasons set forth below, I agree with plaintiff that the court may exercise

personal jurisdiction over Local 335.

### A.    Applicable Law

"When no federal statute governs personal jurisdiction, the district court applies the law

of the forum state." *Boschetto*, 539 F.3d at 1015 (citing *Panavision Int'l L.P. v. Toeppen*, 141

F.3d 1316, 1320 (9th Cir. 1998)).  Oregon's long-arm statute creates a standard co-extensive with

federal jurisdictional standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of

Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of

federal constitutional due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758,

760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction

of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the

court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of

fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801

(9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Two forms of

personal jurisdiction are available for application to a nonresident defendant: general personal

jurisdiction and specific personal jurisdiction.

"For general jurisdiction to exist over a nonresident defendant . . . , the defendant must

engage in 'continuous and systematic general business contacts' that 'approximate physical

presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal citation omitted)

(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), and

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  "This is an

Page 8 - FINDINGS AND RECOMMENDATION

exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."

*Id.* (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)).

The courts of the Ninth Circuit apply a three-pronged test for determining whether the exercise of specific personal jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test," whereupon the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

In the context of cases that sound primarily in tort, courts have considered it sufficient to satisfy the first prong of the test where the only contact a nonresident defendant had with the forum state was "the 'purposeful direction' of a foreign act having effect in the forum state." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (emphasis omitted) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). This "'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  "The requirement is but a

test for determining the more fundamental issue of whether a 'defendant's conduct and connection

with the forum state are such that he should reasonably anticipate being haled into court there.'"

*Haisten*, 784 F.2d at 1397 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

297 (1980)).

The second prong of the test requires that the plaintiff's claim arise out of the nonresident

defendant's forum-related activities.  *See Boschetto*, 539 F.3d at 1016.

At the third prong of the test, the burden shifts to the defendant to present a "compelling

case" to rebut the presumption that the exercise of specific personal jurisdiction would be

reasonable.  *See id.*

> In determining reasonableness, [the courts of the Ninth Circuit]
> examine[ ] seven factors: the extent of purposeful interjection, the
> burden on the defendant to defend the suit in the chosen forum, the
> extent of conflict with the sovereignty of the defendant's state, the
> forum state's interest in the dispute, the most efficient forum for
> judicial resolution of the dispute, the importance of the chosen
> forum to the plaintiff's interest in convenient and effective relief,
> and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990) (citing *Fed. Deposit Ins. Corp.*

*v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987)), *rev'd on other grounds*, 499 U.S.

585 (1991).  "The court[s] must balance the seven factors to determine whether the exercise of

jurisdiction would be reasonable."  *Id.* (citing *British-Am.*, 828 F.2d at 1442).

In this case, plaintiff argues that the court has specific personal jurisdiction for two

reasons—that is, Local 335 entered into a labor agreement in Oregon with an Oregon company

and Local 335 investigated plaintiff's grievance against an Oregon company, including making at

Page 10 - FINDINGS AND RECOMMENDATION

least one telephone call to the company.  Alternatively, plaintiff requests that the court permit her

to conduct jurisdictional discovery and to submit further briefing to show that Local 335 is

subject to general personal jurisdiction in Oregon.

### B.    Specific Personal Jurisdiction

#### 1.    Labor Agreement

Plaintiff argues that the court has specific personal jurisdiction over Local 335 because it

entered into a labor agreement with the Oregon-Columbia Chapter of the Associated General

Contractors of America ("the Oregon AGC"), an Oregon nonprofit corporation, and such

agreement was signed in Wilsonville, Oregon.  Plaintiff further contends that the conduct

complained of in the instant suit arises out of the labor agreement.  That is, the agreement

imposes a duty on Local 335 to accept and process grievances and Local 335 failed to adequately

do so in this case based on plaintiff's sex and in retaliation for her report of sexual harassment.

Local 335 responds that plaintiff cannot satisfy the first prong of the specific-personal-

jurisdiction test:

> The mere fact that Local 335 may at times have physically
> conducted bargaining for a so-called 'master labor agreement' in
> locations within Oregon, and that it contracted with a chapter of the
> Associated General Contractors of America that itself is based in
> Oregon, for *work to be performed in Washington State*, is not
> sufficient to establish personal availment.

Local 335's Reply, #50, at 3.  As Local 335 notes, the agreement itself provides that it covers

only certain counties in the State of Washington.  Local 335 also argues that other courts have

"rejected specific personal jurisdiction in circumstances similar to those here," including the

Sixth Circuit Court of Appeals in *Local 670, United Rubber, Cork, Linoleum & Plastic Workers*

*of America v. International Union*, 822 F.2d 613, 620-21 (6th Cir. 1987). Even if plaintiff could meet her burden under the first prong of the test, Local 335 argues that plaintiff has failed to show that her claims against Local 335 arise out of the agreement, "which addresses *work in Washington*." Local 335's Reply, #50, at 7.

For the reasons set forth in Local 335's reply, I find plaintiff's argument unavailing. A defendant does not purposefully avail itself of a forum merely by contracting with a forum resident. *Burger King*, 471 U.S. at 478. As the Supreme Court noted in *Burger King*, the court must also look at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (finding that the defendant had not purposefully availed itself of the laws of California because, among other things, "the contract [made] no reference to California or to the United States" and the contract did not require performance in California). Here, plaintiff points to no evidence beyond the facts that Local 335 contracted with an Oregon resident and that the agreement was signed in Oregon. This alone is insufficient to demonstrate that Local 335 purposefully availed itself of the benefits and protections of Oregon laws.

Even if I were to conclude that plaintiff had satisfied the "purposeful availment" prong of the specific-personal-jurisdiction test, I find that plaintiff has not demonstrated that her claims against Local 335 arise out of or relate to Local 335's forum-related activities. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421). Plaintiff does not dispute that the labor agreement does not cover worked performed in Oregon. Although Local 335

Page 12 - FINDINGS AND RECOMMENDATION

accepted and investigated plaintiff's grievance in this case, it was not required to do so under the

labor agreement because the labor agreement did not cover plaintiff's work at AAC.  The mere

fact that Local 335 cited the labor agreement in its letter denying plaintiff's grievance does not

alter this analysis.

Thus, I find that Local 335's agreement with the Oregon AGC is insufficient to subject

Local 335 to specific personal jurisdiction in Oregon.

### 2.    Investigation of Grievance

Plaintiff next argues that Local 335 is subject to personal jurisdiction in Oregon because

it accepted and investigated plaintiff's grievance against an Oregon employer and at no point did

Local 335 inform plaintiff that it was not the appropriate venue for her grievance.  In response,

Local 335 argues that it "did not purposefully avail itself of the privilege of conducting business

in Oregon through one phone conversation."  Local 335's Reply, #50, at 6.  Even if plaintiff could

satisfy the first prong of the specific-personal-jurisdiction test, Local 335 maintains that plaintiff

cannot meet her burden of demonstrating that "she would not have suffered an injury 'but for'

[Local 335's] forum-related conduct."  *Id.* at 7.  Plaintiff alleges that Local 335 "discriminated

against her by failing to properly represent her and then retaliated against her by failing to

dispatch her to further work within [the union's] jurisdiction"—which Local 335 argues are

activities that occurred solely in Washington.  *Id.*

I agree with plaintiff that Local 335's investigation of her grievance is a sufficient contact

with the State of Oregon such that the court may exercise specific personal jurisdiction.

Applying the first prong of the Ninth Circuit's test for specific personal jurisdiction, I find that

Local 335 purposefully availed itself of the privilege of conducting business in Oregon by

Page 13 - FINDINGS AND RECOMMENDATION

choosing to represent plaintiff even though her work at AAC was outside of its jurisdiction. Local 335 could have advised plaintiff that she needed to file her grievance with the Oregon labor union that dispatched her to AAC, or it could have merely told plaintiff it was unable to assist her. Rather than doing so, however, Local 335 led plaintiff to believe it was the proper forum for her dispute with AAC, worked with plaintiff to determine whether to file a grievance, called AAC prior to filing a grievance on plaintiff's behalf to inquire as to whether she would be rehired, and, finally, called AAC to investigate plaintiff's report of sexual harassment. The alleged effect of Local 335's inadequate investigation was that plaintiff was not rehired at AAC—that is, plaintiff could not return to her job in Oregon. While Local 335 correctly notes that "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the [forum state],'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (alteration in original) (citation omitted), it is the quality of the contact that is relevant to the personal-jurisdiction analysis, *see Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989). Under these circumstances, where Local 335 voluntarily undertook an investigation of plaintiff's dispute with an Oregon employer, I find that Local 335 purposefully availed itself of the privileges of conducting activities in Oregon.

Under the second prong of the specific-personal-jurisdiction test, I find that plaintiff's claims arise out of Local 335's forum-related activities. The gravamen of plaintiff's sex-discrimination and retaliation claims is that Local 335 did not adequately investigate her grievance. Thus, Local 335's forum-related activity—that is, calling AAC to investigate

Page 14 - FINDINGS AND RECOMMENDATION

plaintiff's grievance—is the basis of plaintiff's claims and, accordingly, I find that the second prong of the test is satisfied.

Finally, after weighing the seven factors identified by the Ninth Circuit, I find that Local 335 has not carried its burden to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See Boschetto*, 539 F.3d at 1016. Most notably, as plaintiff points out in her resistance, Local 335 is based in Vancouver, Washington—less than fifteen miles from the courthouse where Local 335 would defend against plaintiff's claims. Ex. A, Myer Decl., #48-1, at 12-13.

In light of the foregoing, I conclude that plaintiff has made "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe*, 248 F.3d at 922 (quoting *Ballard*, 65 F.3d at 1498). As I indicated at oral argument, this finding does not preclude Local 335 from raising this issue again at the summary-judgment stage or at trial, thereby requiring plaintiff to prove "by [a] preponderance of the evidence facts which substantiate the exercise of jurisdiction." *Haisten*, 784 F.2d at 1396.

### C.    General Personal Jurisdiction

In consequence of my finding above that specific personal jurisdiction exists, I find it unnecessary to address plaintiff's alternative request to conduct jurisdictional discovery and to submit further briefing to show that Local 335 is subject to general personal jurisdiction in Oregon.

### CONCLUSION

For the reasons set forth above, Local 335's motion to dismiss for lack of personal jurisdiction (#40) should be denied.

Page 15 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 3rd day of February, 2014.

Honorable Paul Papak
United States Magistrate Judge